**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

Markian Rekshynskyj, et al.,

Plaintiffs,

v.

J.B. Hunt Transport Incorporated, et al.,

Defendants.

No. CV-23-08535-PCT-DJH

**ORDER**

After a previous summary judgment motion was stricken from the record (Doc. 198), Defendant J.B. Hunt Transport Inc. ("Defendant" or "JB Hunt") filed an Amended Motion for Summary Judgment (Doc. 199). Plaintiffs Markian Rekshynskyj and Elissa Rekshynskyj (collectively, the "Rekshynskyj Plaintiffs") filed a Response (Doc. 209) in opposition, which was joined by Plaintiffs Aurelia Gloria Sylvia Durazo and Felix Durazo (collectively, the "Durazo Plaintiffs") as well as Plaintiffs Ethan Caleb Jones and Lindsay Michelle Jones (collectively, the "Jones Plaintiffs") (all together, "Plaintiffs"). (*See* Docs. 210, 213). Defendant thereafter filed a Reply (Doc. 225).

## I. Background

This matter stems from a multi-vehicle accident occurring on June 3, 2022. Plaintiffs were aboard the passenger vehicle involved in the collision, and the defendants to this case have varying affiliations to the commercial vehicle that instigated the collision.

Defendant is licensed as both motor carrier and a property broker. (Doc. 209-1 at 34). Put simply, a broker arranges for the transportation of property, while a motor carrier

transports shipments. *See* 49 U.S.C. § 13102. Funko, LLC ("Funko") employed Defendant's services to complete shipments, including load number 6Y80512 (the "Subject Load"). (*See* Doc. 209-1 at 43–45). The Subject Load was tendered to Defendant, and it was scheduled to be picked up on June 2, 2022 in Everett, Washington and delivered to Buckeye, Arizona on June 5, 2022. (*Id.* at 43). Defendant contracted with Defendant Alpha Lion Trucking LLC ("Alpha Lion"), another licensed motor carrier, to transport the Subject Load. (Doc. 201-1 at 22). Alpha Lion, in turn, contracted with Defendant Iron Line Logistics LLC ("Iron Line") to transport the Subject Load. (Doc. 200-1 at 12–13). Plaintiffs and Defendant presently dispute whether Defendant had reason to know Alpha Lion would transfer the Subject Load to Iron Line for shipment. (*See*, *e.g.*, Doc. 199 at 5; Doc. 209 at 12).

On June 3, 2022, Defendant Harpreet Singh ("Singh") was driving a tractor-trailer, containing the Subject Load. (*See* Doc. 209-1 at 2–8). Singh was employed by Iron Line and was, at that time, operating a tractor-trailer registered to Alpha Lion. (*Id.* at 3; Doc. 199 at 51–55). Singh was driving directly behind the Rekshynskyj Plaintiffs, traveling southbound on US 93. (Doc. 209-1 at 8). While driving, the Rekshynskyj Plaintiffs slowed their vehicle to avoid colliding with other vehicles attempting to exit. (*Id.*) However, Singh did not respond in time, and the tractor-trailer struck the Rekshynskyj Plaintiffs' vehicle from behind. (*Id.*) The impact caused the Rekshynskyj Plaintiffs to careen into the northbound lanes of traffic, where their vehicle ultimately collided with both the Durazo Plaintiffs and Jones Plaintiffs' vehicles. (*Id.*) Plaintiffs sustained various injuries to their persons and their vehicles from the collision. (*See id.* at 4–7).

As a result of the accident, the Rekshynskyj Plaintiffs filed suit against JB Hunt, Alpha Lion, Iron Line, and Singh (collectively, "Defendants") on August 16, 2023. (*See* Doc. 1). On September 20, 2023, the Durazo Plaintiffs similarly sued the same Defendants. *See Durazo v. J.B. Hunt Trasp. Inc.*, 2:23-cv-1985-DJH. And, on October 13, 2023, the Jones Plaintiffs filed a case with this Court, again naming the same Defendants. *See Jones v. J.B. Hunt Trasp. Inc.*, 2:23-cv-2130-DJH. In their respective

cases, Plaintiffs alleged negligence; vicarious liability; negligent selection; and negligent hiring, training, supervision, and retention claims against Defendants. (*See* Doc. 1; *Durazo*, Doc. 1; *Jones*, Doc. 9). Defendants filed a Motion to Consolidate the Rekshynskyj Plaintiffs, Durazo Plaintiffs, and Jones Plaintiffs' cases. (Doc. 29). Defendants' Motion was granted (*see* Doc. 31), and the matters were consolidated into the present case on December 8, 2023. Since then, the parties have conducted significant discovery, successfully extending case deadlines on four separate occasions. (*See* Doc. 145). And Defendant has now moved for summary judgment on Plaintiffs' claims against it.

## II. Legal Standard

A court will grant summary judgment if the movant shows there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A fact is "material" if it might affect the outcome of a suit, as determined by the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a factual dispute is "genuine" when a reasonable jury could return a verdict for the nonmoving party. *Id.*

The moving party bears the initial burden of identifying portions of the record, including pleadings, depositions, answers to interrogatories, admissions, and affidavits, that show there is no genuine factual dispute. *Celotex*, 477 U.S. at 323. Where the moving party will have the burden of proof on an issue at trial, the movant must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). On an issue as to which the nonmoving party will have the burden of proof, however, the movant can prevail "merely by pointing out that there is an absence of evidence to support the nonmoving party's case." *Id.* (citing *Celotex Corp.*, 477 U.S. at 323).

If the moving party meets its initial burden, the nonmoving party must set forth, by affidavit or otherwise as provided in Rule 56, "specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250; Fed. R. Civ. P. 56(e). The non-moving party must make an affirmative showing on all matters placed in issue by the motion as to which

it has the burden of proof at trial. *Celotex*, 477 U.S. at 322. In fact, the non-moving party "must come forth with evidence from which a jury could reasonably render a verdict in [its] favor." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citation omitted).

In considering evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence. Rather, it draws all inferences in the light most favorable to the nonmoving party. *See T.W. Electric Service, Inc. v. Pacific Electric Contractors Ass'n*, 809 F.2d 626, 630-31 (9th Cir. 1987). Courts do not weigh the evidence or attempt to discern the truth of the matter; they only determine whether there is a genuine issue for trial. *Jesinger v. Nevada Fed. Credit Union*, 24 F.3d 1127, 1131 (9th Cir. 1994).

## III. Discussion

Throughout this litigation, Plaintiffs and Defendant have disputed whether Defendant was acting as a "motor carrier" or "broker" in regards to the Subject Load. They further disagree as to whether the Federal Aviation Administration Authorization Act of 1994 ("FAAAA") preempts Plaintiffs' state law claims. Nevertheless, before reaching these arguments, the Court will first address some of the claim-specific arguments raised by Defendants.

### A. Negligent Selection

With respect to Plaintiffs' negligent selection claim, Defendant argues that Plaintiffs failed to produce evidence establishing that Defendant violated the standard of care. (Doc. 199 at 19). This argument went unaddressed by Plaintiffs. (*See generally* Doc. 209).

Under Arizona law, a principal may be liable if it "negligently selects an independent contractor." *Pacheco v. Coffman*, 2023 WL 7896261, at *1 (Ariz. Ct. App. 2023). Section 411 of the Restatement "imposes liability upon the employer of an independent contractor for failure to exercise reasonable care in employing a competent contractor if the work to be performed requires skill in order to avoid the risk of harm to others." *Cordova v. Parrett*, 703 P.2d 1228, 1230 (Ariz. Ct. App. 1985). "To prevail on a

negligent selection claim, the plaintiff must prove the defendant knew or should have known a contractor was not competent to perform the work." *Pacheco*, 2023 WL 7896261, at *2.

Defendant has now submitted that Plaintiff has failed to show any evidence that it breached the standard of care in selecting Alpha Lion. (Doc. 199 at 19). While Defendant's argument is made assuming that it is a broker, Defendant nonetheless stated that there is an absence of evidence that it failed to use reasonable care. (*See id.*). At trial, Plaintiffs would have the burden of proof of demonstrating the elements of their negligent selection claim. And, as stated above, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. Defendant did as much in its Motion.

As a result, the burden shifted to Plaintiffs, who were required to "to designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle*, 627 F.3d at 387. Indeed, Plaintiffs had to show "more than the mere existence of a scintilla of evidence." *Id.* Plaintiffs failed to even address Defendant's argument in their Response, much less set forth any evidence supporting their negligent selection claim. (*See generally* Doc. 209). Even though Plaintiffs might have had a colorable negligent selection claim, they failed to carry their burden in responding to Defendants' Motion. *Faskowicz v. Target Corp.*, 2023 WL 12173446, at *6 (C.D. Cal. 2023) (granting summary judgment on the plaintiff's negligent hiring, supervision, and retention claim where the defendant's "moving papers point to a complete absence of evidence to support such a claim, and Plaintiff has failed to respond to that argument altogether (let alone furnish any evidence in support)"). Therefore, Rule 56(c) "mandates the entry of summary judgment" against Plaintiff as they did not "make a showing sufficient to establish the existence of an element essential" to their negligent selection claim. *Celotex*, 477 U.S. at 322. And the Court will dismiss Plaintiffs' negligent selection claim against Defendant.

**B. Negligent Hiring, Training, Supervision, and Retention**

In addition to arguing the claim is duplicative, Defendant again contends that there is a lack of evidence to substantiate critical elements of Plaintiffs' negligent hiring, training, supervision, and retention claim.[1] (Doc. 199 at 11–14). The Court will begin with Defendant's argument on the lack of evidence.

"For negligent hiring, supervision, and training claims, Arizona follows the Restatement (Second) of Agency § 213." *Hernandez v. Singh*, 2019 WL 367994, at *6 (D. Ariz. 2019) (internal quotations and citation omitted); *Kassman v. Busfield Enterprises*, Inc., 639 P.2d 353, 356 (Ariz. Ct. App. 1981). Section 213 provides:

> A person conducting an activity through servants or other agents is subject to liability for harm resulting from his conduct if he is negligent or reckless:
>
> (a) in giving improper or ambiguous orders of [sic] in failing to make proper regulations; or
> (b) in the employment of improper persons or instrumentalities in work involving risk of harm to others[;]
> (c) in the supervision of the activity; or
> (d) in permitting, or failing to prevent, negligent or other tortious conduct by persons, whether or not his servants or agents, upon premises or with instrumentalities under his control.

Restatement (Second) of Agency § 213. An employer may only be liable for negligent hiring, training, or supervision of an employee if the court finds that the employee committed a tort. *See Kuehn v. Stanley*, 91 P.3d 346, 352 (Ariz. Ct. App. 2004). Once the employee's underlying tort is established, the employer may be liable "not because of the relation of the parties, but because the employer antecedently had reason to believe that an undue risk of harm would exist because of the employment." *Quinonez for and on Behalf of Quinonez v. Andersen*, 696 P.2d 1342, 1346 (Ariz. Ct. App. 1984) (citing Restatement (Second) of Agency § 213, Comment (d)).

"Thus, for a negligent hiring claim to lie, the employer must have known or had some reason to know of the employee's incompetence before hiring the employee." *Hernandez*, 2019 WL 367994, at *6 (collecting cases). "Similarly, to prove negligent

[1] Although the claim is more commonly seen as negligent hiring, training, and supervision, *see*, *e.g.*, *Contreras v. Brown*, 2019 WL 1980837, at *4 (D. Ariz. 2019), Plaintiffs have also pled a negligent retention theory. (*See* Doc. 1 at ¶ 70).

supervision, the plaintiff must show the employer knew or should have known the employee was incompetent and that the employer subsequently failed to supervise the employee, ultimately causing the harm at issue." *Id.* at *7 (collecting cases). To establish a negligent training claim, "a plaintiff must show a defendant's training or lack thereof was negligent and that such negligent training was the proximate cause of a plaintiff's injuries." *Id.* (citation omitted). Importantly, "[a] showing of an employee's incompetence is not necessarily enough; the plaintiff must also present evidence showing what training should have been provided, and that its omission proximately caused the plaintiff's injuries." *Id.* (citation omitted).

Here, Defendant specifically argues that "the record is devoid of any information suggesting Singh was incompetent before Iron Line hired him, much less that Iron Line had any reason to believe him incompetent." (Doc. 199 at 11). And Defendant claims that there is likewise no evidence that "Iron Line knew he was not competent and failed to take adequate precautions," nor "any evidence that Iron Line failed to act reasonably in retaining Singh," when his time with Iron Line had been free of incidents. (*Id.* at 13). As to training, Defendant asserts that "Plaintiffs have failed to show how Iron Line's training was deficient, or what additional training would have prevented this accident." (*Id.* at 13).

Unlike the above challenge to Plaintiffs' evidence, Plaintiffs attempt to set out evidence supporting their negligent hiring, training, and supervision claim. (*See* Doc. 209 at 12–13). Plaintiffs identify testimony by Alpha Lion and Iron Line's corporate representative, stating that Defendant was aware that Alpha Lion used outside carriers and that "Iron Line was a shell of Alpha Lion." (Doc. 209-1 at 26–27). Plaintiffs further submit that Defendant did not check Iron Line or Alpha Lion's procedures for hiring, training, or supervision. (*Id.* at 54). They also show deposition testimony by Singh stating that he did not receive any safety trainings. (*Id.* at 60). Lastly, they point to Singh's deposition testimony saying that he received online access to a "Driver Manual Company Policies and Procedures."[2] (*Id.* at 62).

---

[2] Plaintiffs also claim that Iron Line "neither gave him an employee manual in the language he reads – Punjabi – nor did Iron Line give him someone to translate the document."

Having reviewed Plaintiffs' proffered evidence, the Court finds that it is insufficient to meet Plaintiffs' burden. First, each of the Complaints only alleges that Iron Line was negligent in its hiring, training, supervision, and retention of Singh. (*See* Doc. 1 at ¶¶ 67–70; *Durazo*, Doc. 1 at ¶¶ 67–70; *Jones*, Doc. 9 at ¶¶ 63–66). Therefore, Defendant's lack of involvement with Iron Line's hiring, training, and supervising procedures are not relevant. Second, none of the evidence is pertinent to the element of negligent hiring that Defendant called into question, nor does any of this evidence pertain to Singh's retention. Lastly, the answer "No" to the question "Were you given safety trainings?" is inadequate to establish that Singh's training was deficient and what training should have been provided. Even construing the evidence favorably to Plaintiffs, they have failed to meet their burden on summary judgment, and consequently Defendant's Motion will be granted as to Plaintiffs' negligent hiring, training, supervision, and retention claim.

**C. Negligent Maintenance**

Like the foregoing claims, Defendant also argues that Plaintiffs' "negligent maintenance claim" fails because "[t]here is no evidence that Singh followed Rekshynskyj at an unsafe distance or failed to keep an adequate visual lookout because of any maintenance issue." (Doc. 199 at 14). Furthermore, Defendant state that "[e]ven Plaintiffs' trucking expert does not attribute the accident to any maintenance failure." (*Id.*) The Court does note that Plaintiffs have not pled a stand-alone claim for "negligent maintenance," rather each negligence claim contains an allegation that Alpha Lion and Iron Line "negligently maintained the truck involved in the crash." (*See* Doc. 1 at ¶ 50; *Durazo*, Doc. 1 at ¶ 50; *Jones*, Doc. 9 at ¶ 47). Nonetheless, like their negligent selection claim, Plaintiffs fail to address Defendant's arguments, let alone submit any evidence supporting a negligent maintenance theory. (*See generally* Doc. 209). Thus, for the same reasons as stated in Section III.A., summary judgment is granted in favor of Defendant on Plaintiffs'

---

(Doc. 209). However, this assertion is not supported by the identified deposition testimony. While the testimony does establish that Singh only speaks Punjabi and can only read a little English, the other referenced testimony refers vaguely to "paperwork" or "documents," so it cannot be ascertained if these materials were the employee manual. (*See* 209-1 at 59, 61, 63).

negligent maintenance theory.

**D. The FAAAA**

At this point, Plaintiffs' negligence claim and vicarious liability theory[3] remain. Unlike the claims above, Defendant does not raise any claim-specific arguments on the negligence claim. So, the Court will now turn to the parties' arguments regarding Defendant's classification and preemption under the FAAAA.

The FAAAA was enacted with the dual purpose of eliminating "non-uniform state regulations of motor carriers" and leveling the playing field between air carriers and motor carriers. *Californians For Safe & Competitive Dump Truck Transp. v. Mendonca*, 152 F.3d 1184, 1187 (9th Cir. 1998). To carry out these aims, "[t]he FAAAA expressly preempts certain state regulation of intrastate motor carriage." *California Trucking Assn. v. Su*, 903 F.3d 953, 959 (9th Cir. 2018).

Here, Defendant first argues that Plaintiffs' claims fail because it was acting as a "broker," rather than a "motor carrier" as Plaintiffs assert. (Doc. 199 at 7). Plaintiffs disagree, claiming that the evidence demonstrates that Defendant held itself out as a motor carrier. (Doc. 209 at 9). The parties then contest whether the FAAAA would preempt Plaintiffs' claims if Defendant were deemed a broker. (*See* Doc. 199 at 14–19; Doc. 209 at 13–19).

/ / /

**1. Motor Carrier v. Broker**

The "motor carrier" versus "broker" dispute is pertinent to Plaintiffs and Defendant

[3] Defendant asserts in its Reply that Plaintiffs failed to produce any evidence that Defendant exercised the requisite control over Singh to be held vicariously liable. (Doc. 225 at 12–13). However, Defendant did not raise this argument in its Motion. (*See generally* Doc. 199). Instead, Defendant primarily discusses vicarious liability in its argument that Plaintiffs' negligent hiring, training, and supervision claim is moot and that vicarious liability is preempted. (*See id.* at 8–11, 15–16). Although Defendant includes cites to evidence showing a lack of control over Singh (*see id.* at 7), such citations were provided in support of other arguments and do not serve to raise an argument such that the Court could rule on it. *In re E.R. Fegert, Inc.*, 887 F.2d 955, 957 (9th Cir. 1989). Because Defendant did not question the sufficiency of Plaintiffs' vicarious liability evidence in its Motion, Plaintiffs did not have a fair opportunity to respond to this argument, and thus the Court will not further consider it. *See Adriana Intern. Corp. v. Thoeren*, 913 F.2d 1406, 1416 n.12 (9th Cir. 1990) (declining to address an argument raised for the first time in a reply brief).

because "[w]hether an entity acted as a 'broker' or a 'motor carrier' may be determinative as to whether a state common law claim is preempted under the FAAAA." *Gee v. JB Hunt Transp. Inc.*, 2024 WL 6893878, at *2 (D. Ariz. 2024). 29 U.S.C. § 13102(14) defines a "motor carrier" as "a person providing motor vehicle transportation for compensation." And a "broker" means "a person, other than a motor carrier or an employee or agent of a motor carrier, that as a principal or agent sells, offers for sale, negotiates for, or holds itself out by solicitation, advertisement, or otherwise as selling, providing, or arranging for, transportation by motor carrier for compensation." 49 U.S.C. 13102(2).

Plaintiffs and Defendants have submitted competing evidence supporting either Defendant's role as a broker or motor carrier. (*See* Doc. 199 at 7; Doc. 209 at 9–10). In its Motion, Defendant's discussion of whether it was a broker or motor carrier is rather cursory. Defendant states only that "the uncontroverted evidence establishes [Defendant] was not a motor carrier for the subject load, but a broker." (Doc. 199 at 7). To support this assertion, Defendant cites primarily to deposition testimony, and the majority of it comes from Defendant's employee, who stated that Defendant was acting in its brokerage role. (*See* Doc. 201-1 at 2–19). Additionally, Defendant identifies testimony from Defendant Alpha Lion's employee agreeing that it was Alpha Lion's understanding that Defendant was acting in its "broker capacity" when it arranged for Alpha Lion to transport the Subject Load. (Doc. 200-1 at 23). Defendant also points to Singh's testimony that he never had any contact with Defendant about the subject load or otherwise. (Doc. 199 at 41). Importantly, Defendant shows the Carrier Confirmation with Alpha Lion for the transport of the Subject Load, which states that Defendant, "as a licensed Property Broker, hereby arranges for [Alpha Lion] to transport [the Subject Load] as a licensed Motor Carrier." (Doc. 201-1 at 22).

By contrast, Plaintiffs' countervailing evidence concerns Defendant's dealings with Funko about the Subject Load. C.F.R. § 371.2 provides that "[m]otor carriers…are not brokers within the meaning of this section when they arrange or offer to arrange the transportation of shipments which they are authorized to transport and which they have

accepted and legally bound themselves to transport." As a result, "Section 371.2(a) leads the Court to conclude that an entity's status as a motor carrier or a broker may—at least in part—be determined by the capacity in which the entity was retained by the shipper." *Gee*, 2024 WL 6893878, at *4. "Put differently, if [Defendant] accepted the shipment as a carrier in the view of the Shipper, arguably [Defendant] could not, then, act as a broker" in arranging for Alpha Lion to transport the Subject Load. *Id.*

Plaintiffs first show that Defendant's invoice for the Subject Load lists Defendant's motor carrier number, not its broker number, and includes a fuel surcharge. (*See* Doc. 209-1 at 43). Plaintiffs note that "JB Hunt" is listed as the "Carrier" for the Subject Load in the Bill of Lading (Doc. 199 at 50), and Defendant was similarly listed as the "Carrier" for the Subject Load in chart exchanged in emails between Defendant and Funko. (Doc. 209-1 at 45). Defendant argues that the Bill of Lading is not dispositive as it was not prepared by Funko, not JB Hunt. (Doc. 225 at 8). However, this creates a question as to whether Funko believed Defendant was acting as a motor carrier. Plaintiffs also point out that, when informing Funko of the accident, Defendant's employee stated in her email that "our driver was involved in an accident[.]" (Doc. 209-1 at 47).

The Court recognizes that Defendant's contract with Funko acknowledged that it was licensed as a motor carrier and a property broker, and it explained when Defendant would be acting in either capacity. (Doc. 209-1 at 34). And Defendant's representative has testified that JB Hunt that every "load that was moved with Funko was a brokerage load." (Doc. 201-1 at 7). But this does not help clarify Funko's understanding as to Defendant's role, and the Court has not been directed to any other evidence concerning Funko's viewpoint. Lastly, Plaintiffs point out that Defendant's employee testified that there was no documentation that Funko was informed that Defendant was operating exclusively as a broker for the Subject Load. (Doc. 209-1 at 37). While the Court agrees with Defendant that it is Plaintiffs' burden to show that Defendant was a motor carrier, the lack of the foregoing evidence lends itself to the fact that Defendant has not shown the absence of a genuine dispute for trial.

At the present juncture, viewing the facts in the light most favorable to Plaintiff, the Court finds that Defendants have not shown the absence of a genuine factual dispute. Plaintiffs provided evidence in conflict with that shown by Defendant, and therefore this is an issue for a trier of fact. *Bator v. State of Hawai'i*, 39 F.3d 1021, 1026 (9th Cir. 1994) ("At the summary judgment stage…the district court may not make credibility determinations or weigh conflicting evidence."). All that said, given the Court's ruling below on the preemption issue and its rulings above, it is unclear what further import Defendant's designation as a "motor carrier" or "broker" has on these proceedings.

**2. Preemption**

Notwithstanding the above analysis, even if Defendant was deemed a "broker," Plaintiffs' negligence claim would still survive preemption. This conclusion is easily reached given the Ninth Circuit's holding in *Miller v. C.H. Robinson Worldwide, Inc.*, 976 F.3d 1016 (9th Cir. 2020) and the Supreme Court's recent decision in *Montgomery v. Caribe Transport II, LLC*, 146 S. Ct. 1199 (2026).

In relevant part, the FAAAA states:

> (1) General rule- Except as provided in paragraphs (2) and (3), a State, political subdivision of a State, or political authority of 2 or more States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier . . . broker, or freight forwarder with respect to the transportation of property
>
> (2) Matters not covered. - Paragraph (1) – (A) shall not restrict the safety regulatory authority of a State with respect to motor vehicles . . . .

49 U.S.C. § 14501(c). Although the FAAAA preempts state regulations and laws "related to a price, route, or service" of a motor carrier or broker, the statute provides for a safety exception. *See* 49 U.S.C. § 14501(c)(2). By way of this exception, the FAAAA specifically saves to the States "safety regulatory authority with respect to motor vehicles." *Id.* *See also City of Columbus v. Ours Garage & Wrecker Serv., Inc.*, 536 U.S. 424, 438 (2002) (holding that the statute's intent was not to "restrict existing safety regulatory authority of a State").

In *Miller*, a motorist sued, amongst others, a freight broker alleging that the freight broker negligently selected an unsafe motor carrier to transport its goods. *Miller*, 976 F.3d at 1020. Similarly to Defendant, the broker, In *Miller*, argued that plaintiff's common-law claims did not fall within the safety exception and were therefore preempted. *Id.* at 1026. However, the court held that the safety exception applied to negligence claims against brokers when they arise out of motor vehicle accidents. *Id.* at 1031. In so ruling, the *Miller* court explained that the phrase "the safety regulatory authority of a State," in the FAAAA includes a State's right to regulate safety through common-law tort claims. *Id.* at 1026.

Defendant's argument that the Court should decline to follow *Miller* in favor of Seventh and Eleventh Circuit opinions is wholly unavailing. (*See* Doc. 199 at 18–19). As Defendant should be well aware, "[t]his court is bound by the Ninth Circuit's interpretation of a federal statute." *Sunburst Minerals, LLC v. Emerald Copper Corp.*, 300 F. Supp. 3d 1056, 1065 (D. Ariz. 2018). *See also Stark v. J.B. Hunt Transp. LLC*, 2025 WL 2377029, at *7 (C.D. Cal. 2025) (rejecting the same argument, applying *Miller*, and finding the plaintiff's state common law claims were not preempted). Even more so, the opinions Defendant relies upon, *Ye v. GlobalTranz Enters., Inc.*, 74 F.4th 453 (7th Cir. 2023) and *Aspen Am. Ins. Co. v. Landstar Ranger, Inc.*, 65 F.4th 1261 (11th Cir. 2023), have just been abrogated by the Supreme Court in *Montgomery*. The Supreme Court, like the Ninth Circuit, held that a negligent hiring claim against a broker, stemming from a vehicle collision, "falls within the FAAAA's safety exception, which saves it from preemption." *Montgomery*, 146 S. Ct. at 1205.

The Court recognizes that *Montgomery* and *Miller* concern negligent hiring/selection claims, which the Court has already dismissed against Defendant. However, above all, *Miller*'s central holding is that the safety exception in the FAAAA means that freight brokers and motor carriers can be found liable for common law negligence claims concerning motor vehicle safety. *Miller*, 976 F.3d at 1026. *Miller* did not cabin its holding to only negligent selection claims and instead ruled that "negligence claims against brokers, to the extent that they arise out of motor vehicle accidents, have the

requisite 'connection with' motor vehicles." *Id.* at 1031. Therefore, because this case arises from a motor vehicle collision, Plaintiffs may proceed with their vicarious liability theory on their common-law negligence claim against Defendant. Whether Plaintiffs can establish the multiple layers of vicarious liability that they alleged remains to be seen. (*See* Doc. 1 at ¶¶ 59–60).

Accordingly,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment (Doc. 199) is **GRANTED IN PART** and **DENIED IN PART**. Summary judgment is granted in favor of Defendant on Plaintiff's negligent hiring, training, supervision, and retention and negligent selection claim as well as Plaintiff's negligent maintenance theory, and these claims are dismissed. Defendant's Motion is denied as to Plaintiff's negligence claim and vicarious liability theory.

**IT IS FURTHER ORDERED** that the parties are directed to comply with Paragraph 10 of the Rule 16 Scheduling Order (Doc. 42 at 6–7) regarding notice of readiness for pretrial conference.

**IT IS FINALLY ORDERED** that the parties shall indicate when assistance from the Court is needed in seeking settlement of the case. Upon a joint request by the parties, the Court will refer the matter for a settlement conference before a Magistrate Judge.

Dated this 28th day of August, 2026.

Honorable Diane J. Humetewa
United States District Judge