**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

Markian Rekshynskyj, et al.,

Plaintiffs,

v.

J.B. Hunt Transport Incorporated, et al.,

Defendants.

No. CV-23-08535-PCT-DJH

**ORDER**

On October 10, 2025, Defendant J.B. Hunt Transportation Inc. ("Defendant") filed two Daubert Motions to exclude certain experts retained by Plaintiffs. First, Defendant filed a Motion to Exclude Plaintiffs' Expert Adam Grill ("Grill") (Doc. 189), which was joined by Defendant Alpha Lion Trucking LLC ("Alpha Lion"). (*See* Doc. 206). Plaintiffs Aurelia Gloria Sylvia Durazo and Felix I. Durazo (collectively, the "Durazo Plaintiffs") filed a Response in opposition of Defendant's Motion, which was joined by Plaintiffs Elissa Rekshynskyj and Markian Rekshynskyj (collectively, the "Rekshynskyj Plaintiffs") as well as Plaintiffs Ethan Caleb Jones and Lindsay Michelle Jones (collectively, the "Jones Plaintiffs") (all together, "Plaintiffs"). (*See* Docs. 203, 205). Defendant then filed a Reply (Doc. 215).

Second, Defendant filed a Motion to Exclude Plaintiffs' Expert Anthony L. Santa Maria ("Santa Maria") (Doc. 190), which was again joined by Alpha Lion. (*See* Doc. 207). As Santa Maria is their expert, the Rekshynskyj Plaintiffs filed a Response (Doc. 204) in opposition to Defendant's Motion, and Defendant filed a Reply (Doc. 214).

## I. Background

The Court adopts the background section in its Order on Defendant's Motion for Summary Judgment and incorporates it here.[1] (*See* Doc. 243 at 1–3). However, briefly, this matter stems from a multi-vehicle accident occurring on June 3, 2022. (*See generally* Doc. 1). The accident was instigated when a tractor-trailer driven by Defendant Harpreet Singh ("Singh") rear ended the Rekshynskyj Plaintiffs' vehicle, causing a collision with the Durazo and Jones Plaintiffs. (*See id.*). Defendant, Alpha Lion, and Defendant Iron Line Logistics, LLC ("Iron Line") were involved, in varying ways, with the shipment of Subject Load that Singh was transporting that day. Due to the accident, three separate cases were filed by the Rekshynskyj Plaintiffs, Durazo Plaintiffs, and Jones Plaintiffs, respectively, and these cases were later consolidated into the present matter. (*See* Doc. 25).

In the course of their extensive discovery efforts, Plaintiffs and Defendants retained various experts. Their experts were appropriately disclosed and made available for depositions. At this time, Defendant moves to exclude Plaintiffs' expert in the trucking industry as well as the Rekshynskyj Plaintiffs' general contractor expert. (Docs. 189, 190).

## II. Legal Standard

Rule 702 of the Federal Rules of Evidence tasks the trial court with a special "gatekeeping" obligation to ensure that any expert testimony provided is relevant and reliable. *Daubert v. Merrell Dow Pharm.*, Inc., 509 U.S. 579, 589 (1999). A qualified expert may testify based on their "scientific, technical, or other specialized knowledge" if it "will assist the trier of fact to understand the evidence." Fed. R. Evid. 702(a). An expert may be qualified to testify based on his or her "knowledge, skill, experience, training, or education." *Id*. The expert's testimony must also be based on "sufficient facts or data," be the "product of reliable principles and methods," and the expert must have "reliably applied the principles and methods to the facts of the case." *Id*. at 702(b)–(d).

The test for reliability is, however, flexible, and courts have "broad latitude" in

[1] Unless otherwise stated, defined terms will carry the same meaning as in the summary judgment Order.

applying it. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141–42 (1999). Factors to consider include: "general acceptance of the method in the scientific community; whether the method has been subject to publication or peer review; whether the known or potential error rate is acceptable; whether the testimony is based on independent research or prepared specifically for litigation; and whether the expert points to an objective source to show that she has followed the scientific method." *In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.*, 984 F. Supp. 2d 1021, 1026 (C.D. Cal. 2013) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1316–19 (9th Cir. 1995)). However, these factors do not apply to testimony that depends on knowledge and experience of the expert, rather than a particular methodology. *United States v. Hankey*, 203 F.3d 1160, 1169 (9th Cir. 2000) (citation omitted) (finding that *Daubert* factors do not apply to a police officer's testimony based on twenty-one years of experience working undercover with gangs). Ultimately, "the circumstances of the particular case will dictate which factors the district court should consider in making its determination." *In re Countrywide*, 984 F. Supp. 2d at 1026 (citing *Kumho*, 526 U.S. at 150).

The proponent of expert testimony has the ultimate burden of showing that the expert is qualified and that the proposed testimony is admissible under Rule 702. *See Lust v. Merrell Dow Pharm., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996). The trial court is vested with broad discretion in deciding whether an expert is qualified to testify. *See, e.g., General Elec. Co. v. Joiner*, 522 U.S. 136, 142 (1997); *United States v. Espinosa*, 827 F.2d 604, 611 (9th Cir.1987) ("The decision to admit expert testimony is committed to the discretion of the district court and will not be disturbed unless manifestly erroneous"). "Rule 702 should be applied with a 'liberal thrust' favoring admission." *Messick v. Novartis Pharmaceuticals Corp.*, 747 F.3d 1193, 1197 (9th Cir. 2014) (quoting *Daubert*, 509 U.S. at 588).

## III. Discussion

The Court will address the parties' arguments pertaining to Grill, then turn to those about Santa Maria.

**A. Plaintiff's Expert Grill**

Plaintiffs retained Grill as a trucking expert, and Grill compiled a report that opined on five overarching topics: "[g]eneral trucking industry customs, practices, and standards;" "[d]efinitions, roles, and responsibilities, of various parties as it relates to the commercial trucking industry;" "[t]he CMV operating performance of Defendant Harpreet Singh as it relates to this case;"[2] "[t]he motor carrier management responsibilities of J.B. Hunt Transport, Inc., Iron Line Logistics, LLC, and Alpha Lion Trucking, LLC as it relates to this case;" and "[d]eterminations of accident preventability from an industry standpoint." (Doc. 189 at 72).

Defendant states that Grill's report and testimony should be excluded because they include improper legal conclusions, Defendant was not a "motor carrier," are based on insufficient facts and data, and are not the product of reliable methodology. (*See generally id.* at 1–15).

**1. Relevance**

The Court raises this first issue on its own volition due to the recent Order on Defendant's Motion for Summary Judgment. (Doc. 243). Defendant's Daubert Motions were filed before a ruling on its summary judgment motion, and at that time, relevance was not an issue. However, the outcome on summary judgment obviates some opinions in Grill's report.

Federal Rules of Evidence 402 provides that "[i]rrelevant evidence is not admissible." And "[e]xpert estimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Daubert*, 509 U.S. at 591 (internal quotations and citation omitted). It so follows that if expert testimony is irrelevant, it is inadmissible under Rule 402. Here, the Court granted summary judgment in Defendant's favor on Plaintiffs' negligent selection and negligent hiring, training, supervision, and retention claim as well as Plaintiff's negligent maintenance theory. (*See* Doc. 243). Therefore, to the extent Grill's opinions concern Defendant's responsibilities for hiring, training, supervision,

[2] CMV refers to "commercial motor vehicle." (Doc. 189 at 72).

retention, or maintenance or their negligence as to any of these topics, these opinions are now superfluous and will be excluded under Rule 402.

**2. Legal Conclusions**

Generally, "testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Fed. R. Evid. 704(a). "That said, an expert witness cannot give an opinion as to her legal conclusion, i.e., an opinion on an ultimate issue of law." *Hangarter v. Provident Life and Acc. Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004) (internal quotation marks and citation omitted). *See also Crow Tribe of Indians v. Racicot*, 87 F.3d 1039, 1045 (9th Cir. 1996) ("Expert testimony is not proper for issues of law.").

"The line between an opinion that is a legal conclusion that addresses an ultimate issue of law and one that merely embraces a legal conclusion is not always a clear one." *IceMOS Tech. Corp. v. Omron Corp.*, 2019 WL 4750129, at *11 (D. Ariz. 2019); *see Hangarter*, 373 F.3d at 1017 ("[A] witness may properly be called upon to aid the jury in understanding the facts in evidence even though reference to those facts is couched in legal terms."). However, the Ninth Circuit has provided that "an expert may not address whether certain facts mean a party has satisfied an element of the party's claim." *IceMOS*, 2019 WL 4750129, at *11 (citing *Hangarter*, 373 F.3d at 1016–17).

Defendant sets forth a list of sixteen opinions in Grill's report or testimony that it argues constitute impermissible expert opinions. (Doc. 189 at 5–7). The proclaimed "legal conclusions" roughly regard either the applicability of the Federal Motor Carrier Safety Regulations ("FMCSR"); whether industry standards, regulations, or statutes were violated; and the defendants' control over and/or responsibility for Singh. (*See id.*). The challenged opinions are addressed by subject matter in the following subsections.

**a. Opinions on Singh's Employee Status and Responsibility for/Control over other Defendants**

First, the Court agrees that Grill's opinion that, based on the facts presented, Defendant and/or Alpha Lion exercised control over Singh is an inadmissible legal conclusion. Vicarious liability is at issue in these proceedings. Under Arizona law, "[f]or

an employer to be held vicariously liable for an employee's negligent acts, the employee must be (1) subject to the employer's control or right of control, and (2) acting in furtherance of the employer's business." *Engler v. Gulf Interstate Engr., Inc.*, 258 P.3d 304, 309 (Ariz. Ct. App. 2011), *aff'd*, 280 P.3d 599 (Ariz. 2012). And as just stated above, an expert offers a legal conclusion where they opine on an ultimate legal issue, such as a necessary element of a claim. Because control over an employee is necessary to find vicarious liability, any opinion by Grill that Defendant exercised control over or were responsible for Singh will be excluded. So too will any opinion that Alpha Lion acted as an "extension" of Defendant. Whether Defendant exerted control over any other defendant will be for a jury to determine.

The Court also excludes the opinion that Singh was Defendant's "employee" by way of any "independent contractor agreements" as it offers Grill's contractual interpretation. In general, Grill will not be allowed to testify about matters of contract interpretation. "Without a doubt, '[t]he interpretation of a contract is an issue of law,' and '[e]xpert testimony is not proper for issues of law.' " *SiteLock LLC v. GoDaddy.com LLC*, 562 F. Supp. 3d 283, 328 (D. Ariz. 2022) (citing *Crow Tribe*, 87 F.3d at 1045). To this end, the Court will exclude opinions by Grill that interpret contractual relations between Defendants or Funko.

**b. Opinions on Applicability and Violations of the FMCSR**

Further, Grill "may not conclude as a matter of law that a particular regulation is applicable to" any Defendant. *Amalu v. Stevens Transp., Inc.*, 2018 WL 6829044, at *3 (W.D. Tenn. 2018). Likewise, whether any FMCSR provision or other regulatory or statutory authority was violated is a legal conclusion that will be excluded. It is the Court's duty, not the expert's, to determine the applicability and meaning of regulations and statutes. *Morris v. BNSF Ry. Co.*, 790 F. Supp. 3d 1129, 1141 (W.D. Wash. 2025) ("Whether a party violated a federal regulation is a question of law and thus the subject of the Court's instructions, not the subject of expert testimony.") (internal quotations and citation omitted). "With respect to the FMCSR, '[o]ther courts have applied the same

reasoning to exclude testimony from trucking industry experts regarding the applicability of the FMCSR to a particular set of facts.' " *Kucharski v. Orbis Corp.*, 2017 WL 1806581, at *6 (N.D. Ill. 2017) (collecting cases). Even still, "Plaintiff[s] may present the relevant FMCSRs through Mr. Grill as this will assist the jury in understanding the standard of care in the trucking industry, an area with which they may not be familiar." *Malburg v. Grate*, 2014 WL 4473786, at *4 (E.D. Mich. 2014).

**c. Opinions on Other Industry Standards and Violations Thereof**

Next, Grill may opine on other industry standards outside of those established by the FMCSR. However, the Court will exclude any opinion that such standards were in fact violated or not met by Singh or other Defendants. Plaintiffs have brought negligence-based claims against the defendants, and therefore whether a standard of care was breached is an ultimate issue of law. *C.f. Hangarter*, 373 F.3d at 1016 (deciding that the expert's testimony that the defendants deviated from industry standards "did not improperly embrace the issue of bad faith").

**d. Opinions that Defendant was a Motor Carrier**

Finally, Defendant challenges Grill's opinions that Defendant was acting as a motor carrier. The parties have thoroughly disagreed on this issue throughout these proceedings. Plaintiffs assert that Defendant was a motor carrier for the Subject Load, while Defendant maintains that it was a broker. Grill now offers the following opinions: more than one motor carrier can operate a CMV if independent contractors are used; Defendant, Alpha Lion, and Iron Line were all motor carriers; Defendant was exercising motor carrier duties and holding itself out as a motor carrier; and the Bill of Lading bound Defendant to the transportation of the subject load. (Doc. 189 at 82–88, 103). Defendant argues that these opinions are inadmissible legal conclusions.

Initially, although Defendant clearly disagrees with the conclusion that it was a motor carrier, it did not provide discussion as to how this issue is an ultimate issue of law.[3]

[3] The necessity of a jury determination on Defendant's status as a "motor carrier" or "broker" is especially questionable considering the fact that Plaintiffs only pled that Iron

However, "[w]hen an expert's interpretation of motor carrier status is predicated on the interpretation of statutes without further factual investigation, the Court must exclude that testimony." *Carter v. Khayrullaev*, 2022 WL 9922126, at *6 (E.D. Mo. 2022). At the same time, the Court perceives no issue with Grill providing his opinion that certain evidence, such as the Bill of Lading, is indicative of Defendant's status as a motor carrier. *Id.* ("[The expert] employs the FSMCA in order to describe the actions a motor carrier is required to undertake. He also examines the bill of lading in order to determine whether [defendant] operated in that manner, as the industry would expect of a motor carrier. Though [defendant] takes issue with [the expert's] reading of the bill of lading, this contention is best addressed on cross-examination, rather than by excluding [the expert's] testimony."). Yet, Grill will not be allowed to opine on the legal import of the Bill of Lading.

Further, the Court cannot say, presently, that pointing to certain facts to conclude that Defendant was performing motor carrier acts or holding itself out as a motor carrier constitutes an impermissible legal conclusion. Upon review, Grill's opinion "is sufficiently predicated on evidence of actual usage of the terms in the industry to distinguish it from a mere application of the FMCSA to the facts." *Id.* Moreover, the Court takes Plaintiffs' point that Defendant is offering its own industry expert, who will presumably opine that Defendant was a broker. Under Defendant's reasoning, this too would be an inadmissible legal conclusion. Therefore, the Court will not exclude opinions that Defendant was a motor carrier. The parties can raise the appropriate objections at trial should Grill's or any other expert's opinion venture into the realm of a legal conclusion. *See*, *e.g.*, *Amalu*, 2018 WL 6829044, at *3 ("[Defendants'] issues with [the expert's] interpretation of what constitutes a motor carrier or employee reflect an issue with his conclusion and the factual basis on which he reaches his conclusion. Defendants' concerns are properly addressed through cross-examination and impeachment.").

Lastly, the Court will exclude Grill's opinion that there can be more than one motor

---

Line and Alpha Lion were Singh's "statutory employer[s]." (*See* Doc. 1 at ¶¶ 57–58).

carrier to a CMV to the extent that it relies on his interpretation of independent contractor relationships. However, Grill may testify based on his experience in the trucking industry.

**3. Remaining Arguments**

Defendant also argues that Grill's opinions about JB Hunt are irrelevant and inadmissible because they are "based on his incorrect legal conclusions that J.B. Hunt was a 'motor carrier' and that J.B. Hunt employed Singh." (Doc. 189 at 11–12). Furthermore, Defendant claims that Grill's opinions are not supported by sufficient facts or data nor are they the product of reliable methodology. (*Id.* at 13914). Upon review of these arguments, they primarily disagree with the conclusions that Grill reached or the assumptions from which they were drawn; however, Defendant's dissention is not a basis for excluding expert testimony. *Unknown Party v. Ariz. Bd. of Regents*, 641 F. Supp. 3d 702, 727 (D. Ariz. 2022) ("Disagreement with an expert's assumptions does not, in general, provide a basis for excluding the expert's testimony."); *see*, *e.g.*, *Grant v. Wells Fargo*, 2025 WL 3642084, at *5 (C.D. Cal. 2025) ("Defendant identifies various factors that [the expert] failed to address. Again, a jury may find these arguments persuasive and adopt Defendant's damages calculation accordingly, but the Court will not exclude [the expert's] testimony on these grounds.") (internal citations omitted).

Defendant's methodology arguments are, likewise, unpersuasive because Grill's opinions are based on his experience in the trucking industry. (Doc. 189 at 74). "Where an expert offers non-scientific testimony, 'reliability depends heavily on the knowledge and experience of the expert, rather than the methodology or theory behind' the testimony." *Garner v. Amazon.com, Inc.*, 2026 WL 861003, at *1 (W.D. Wash. 2026) (citation omitted). And Defendant did not call into question Grill's experience or knowledge.

On a final note, Defendant offers another brief argument that Grill fails to distinguish between the different corporate entities. (Doc. 189 at 12–13). However, these arguments are sufficiently addressed by the Court's rulings above.

To again be clear, nothing in the foregoing rulings prevents Grill from offering his opinions on industry customs, practices, and norms. *See*, *e.g.*, *Amalu*, 2018 WL 6829044,

at *3 ("[The expert] may testify as to his knowledge regarding customs and standard practices in the trucking industry and Defendants' conduct as a matter of fact regarding the terms 'motor carrier,' 'contract,' and 'employee.' "). Nevertheless, Grill's opinions and testimony will be limited as stated in the foregoing sections.

**B. Plaintiff's Expert Santa Maria**

Santa Maria is licensed residential and commercial contractor that was retained by the Rekshynskyj Plaintiffs to opine on the necessary changes to their home due to Mrs. Rekshynskyj's injury and the anticipated costs of those projects. (*See* Doc. 190 at 38–41, 43). Defendant now argues that Santa Maria's report contains improper legal conclusions, offers unqualified opinions, is not based on sufficient facts or data, and is not the result of reliable methodology. (*See generally* Doc. 190).

**1. Legal Conclusions**

Defendant first argues that "Santa Maria's opinions about whether the ADA's requirements applied to [Mrs. Rekshynskyj's] home, and what the ADA required, are conclusory legal conclusions that run contrary to the ADA itself, and are not admissible expert opinions." (Doc. 190 at 6).

To be sure, Santa Maria's report states that the Rekshynskyj Plaintiffs' home "does not in any way, form, or fashion meet or have any type of ADA compliance features." (Doc. 190 at 39). He further asserts that first-floor guest bathroom and upstairs doors, restroom, and closet doors will "need to be brought to ADA compliance." (*Id.*) Santa Maria also calls for the installation of ADA plumbing fixtures, doorknob, entry ramp, sidewalks, and gates. (*Id.* at 39–40). However, this case does not bring any ADA claim nor generally concern the ADA. (*See* Doc. 1). Therefore, it cannot be said that Santa Maria is rendering an "opinion on an ultimate issue of law" in this case. *Elsayed Mukhtar v. Cali. State U., Hayward*, 299 F.3d 1053, 1065 n.10 (9th Cir. 2002), *overruled on other grounds by U.S. v. Bacon*, 979 F.3d 766 (9th Cir. 2020).

In Defendant's cited authority, the expert was impermissibly offering legal conclusions on the very elements or ultimate questions the jury was tasked with deciding.

*Krause v. Cnty. of Mohave*, 459 F. Supp. 3d 1258, 1264–65 (D. Ariz. 2020) (limiting expert testimony in an excessive force case where the expert "repeatedly opine[d] that the use of force was 'was not objectively reasonable' " and "conclude[d] that elements of specific legal claims are satisfied"); *Burkhart v. Wash. Metro. Area Transit Auth.*, 112 F.3d 1207, 1212–13 (D.C. Cir. 1997) (determining that the trial court erred in allowing the expert "to offer legal conclusions and misstate relevant legal principles" about the ADA and Rehabilitation Act in a case with claims under the ADA and Rehabilitation Act). By contrast, at no time in this case will the jury be asked to determine whether any structure was ADA complaint or whether an individual violated the ADA. Instead, this is a personal injury car crash case, and Santa Maria's report offers no opinion about the negligence or vicarious liability of any defendant. *See Hangarter*, 373 F.3d at 1017 ("[The expert's] references to California statutory provisions—none of which were directly at issue in the case—were ancillary to the ultimate issue of bad faith."). Thus, Santa Maria is not opining on an ultimate issue of law.

Moreover, Santa Maria's use of "ADA" as a descriptor, such as "ADA gates," "ADA [door]knob," and "ADA plumbing fixtures," does not offer a legal conclusion, rather seems to refer to a particular version of these items. His opinion that the upper floor and guest bathroom need to be "brought to ADA compliance" appears to be an opinion about certain work that the house requires, instead of a conclusion about ADA compliance.

That said, while the Court does not agree that Santa Maria's opinions about bringing features to "ADA compliance" are legal conclusions on an ultimate issue of law, the references to ADA compliance are misleading as to the scope of Santa Maria's expertise and the applicability of the ADA. *Daubert*, 43 F.3d at 1321 n.17 (explaining that courts must exclude expert testimony under Rules 702 and 403 "unless they are convinced that it speaks clearly and directly to an issue in dispute in the case, and that it will not mislead the jury"). As Defendant accurately notes, the ADA does not apply to private residences. *Heyward v. Mosser Properties, Inc.*, 2024 WL 4244847, at *4 (N.D. Cal. 2024) ("[T]he ADA generally does not apply to private residences[.]"). Consequently, on these grounds,

the Court will exclude both of Santa Maria's opinions that various features of the house "need to be brought to ADA compliance." (Doc. 190 at 39).

**2. Qualifications**

Next, Defendant argues that Santa Maria "is not an expert in ADA compliance, or in determining what accommodations are required for a particular disability." (Doc. 190 at 6). Plaintiffs argue that Santa Maria does not claim to be an ADA compliance expert and that his professional experience as a licensed general contractor qualifies him to render his given opinions. (*See* Doc. 204 at 9–11).

Rule 702 governs expert qualifications and "contemplates a broad conception of expert qualifications." *Thomas v. Newton Intern. Enters.*, 42 F.3d 1266, 1269 (9th Cir. 1994). Indeed, "the advisory committee notes emphasize that Rule 702 is broadly phrased and intended to embrace more than a narrow definition of qualified expert." Id. "The threshold for qualification is low for purposes of admissibility; minimal foundation of knowledge, skill, and experience suffices." *PixArt Imaging, Inc. v. Avago Tech. Gen. IP (Singapore) Pte. Ltd.*, 2011 WL 5417090, at *4 (N.D. Cal. 2011) (citing *Hangarter*, 373 F.3d at 1015–16).

Based on the Court's prior analysis and given the exclusion provided above, it is not necessary to consider Santa Maria's qualifications to opine on ADA compliance. Santa Maria, similarly, has not postured himself as an expert "in determining what accommodations are required for a particular disability." (Doc. 190 at 6). In actuality, Santa Maria has provided his opinion on renovations to Plaintiffs' house that would allow Mrs. Rekshynskyj to fully utilize it. Santa Maria's decades of experience as a licensed general contractor coupled with his specialized experience as an approved contractor with the "Veterans affair adaptive housing program" qualifies him to give his opinion as to the pertinent repairs to make the Rekshynskyj Plaintiffs' home accessible and the costs of those adaptations. (Doc. 190 at 43). *See also Tamares Las Vegas Properties, LLC v. Travelers Indem. Co.*, 586 F. Supp. 3d 1022, 1027 (D. Nev. 2022) ("[The expert] plans to testify about whether the weatherproofing that Plaza's builders performed was durable enough to

withstand the anticipated weather conditions prior to the storm; he has not opined and does not plan to opine on any specifics regarding engineering or meteorology. His many years of experience in the field of swimming-pool construction and project management are more than enough to qualify him as an expert on this matter—whether or not he has a degree is inapposite.") (internal citation omitted). If Defendant disagrees with those opinions, then such a disagreement may be explored through cross examination.

**3. Sufficient Facts and Reliable Methodology**

Lastly, Defendant contends that Santa Maria's opinions are not supported by sufficient facts and data nor reliable methodology. (Doc. 190 at 7–8). However, Plaintiffs counter that Santa Maria's proposed costs are properly based on his experience as well as consulting with subcontractors and the Rekshynskyj Plaintiffs. (*See* Doc. 204 at 6–8).

To be sure, the report is not rife with data, but the subject of Santa Maria's report and testimony is not a data-heavy matter. Santa Maria's recommendations are, instead, based on meeting with the Rekshynskyj Plaintiffs, a walkthrough of the Rekshynksyj Plaintiffs' home, and his experience as a contractor. Rule 702's Committee Notes read: "Nothing in this amendment is intended to suggest that experience alone—or experience in conjunction with other knowledge, skill, training or education—may not provide a sufficient foundation for expert testimony." Fed. R. Evid. 702 Committee Notes on Rules—2000 Amendment. Indeed, the Committee Notes continue, "[i]n certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony." *Id.* Estimating the cost of a project is a typical function of a licensed contractor, and therefore Santa Maria's estimations, arrived at upon inspection of the Rekshynskyj Plaintiffs' residence, will not be excluded for unreliable methodology or lack of data. *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010), *as amended* (Apr. 27, 2010) ("Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion.").

Accordingly,

**IT IS ORDERED** that Defendant's Motion to Exclude Plaintiffs' Expert Adam

Grill (Doc. 189) is **GRANTED IN PART** and **DENIED IN PART**. Grill's opinions and testimony are limited to exclude legal conclusions and irrelevant subjects as stated above. Plaintiffs may proceed with the portions of Grill's testimony unaffected by the Court's rulings.

**IT IS FURTHER ORDERED** that Defendant's Motion to Exclude Plaintiffs' Expert Anthony L. Santa Maria (Doc. 190) is **GRANTED IN PART** and **DENIED IN PART**. Santa Maria's two opinions that portions of the Rekshynskyj Plaintiffs' residence "need to be brought to ADA compliance" are excluded, and the remainder of Santa Maria's opinions and testimony may proceed.

Dated this 4th day of September, 2026.

Honorable Diane J. Humetewa
United States District Judge